IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Jon C. Stainbrook, | Case No. 3:05 CV 7380 |
| Plaintiff, | MEMORANDUM OPINION AND ORDER |
| -vs- | JUDGE JACK ZOUHARY |
| Fox Broadcasting Company, | |
| Defendant. | |

This is a diversity case arising out of a business relationship between Jon Stainbrook, a musician and songwriter, and FOX Broadcasting, a television station. Plaintiff brings five claims: (1) conversion; (2) trespass to chattels; (3) accounting for royalties and fees; (4) breach of contract; and (5) copyright infringement. Pending are Defendant's Motion for Summary Judgment (Doc. No. 30) and Defendant's Motion to Dismiss Counts Two and Five (Doc. No. 43). This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332, and 1367. For the reasons set forth below, Defendant's Motions are granted in part and denied in part.

**FACTS**

Plaintiff Jon Stainbrook was approached by Laura Mickelson, a FOX producer, in 1996, to compose music for a children's baseball pre-game show, "In the Zone." The parties executed several written contracts in 1996 and 1997, which provided that Plaintiff would compose a few musical compositions for "In the Zone." Plaintiff provided Digital Audio Tapes (DATs) to Defendant and, in 1996, being pleased with Plaintiff's work, Defendant requested Plaintiff's entire musical catalog in DAT format. This catalog, recorded on eight track reel format, consisted of approximately ninety previously recorded songs. To transfer the songs into DAT format, Plaintiff enlisted the help of Mark

Mickels, who performed the work at no cost (Mikels Dep. 65). Plaintiff claims the format transfer took "hundreds of hours" and that he paid Mikels $50,000 (Stainbrook Dep. 182).

The songs, now saved on three sixty-minute DATs, were mailed to Defendant. Plaintiff unexplainedly destroyed the original eight track reels. Plaintiff asserts that Mickelson, Shopan Entesari and Mark Meloccaro, all employees of Defendant, each confirmed receipt of the DATs (Stainbrook Dep. 207). Mickelson also promised to make copies and return the original DATs (Stainbrook Dep. 204). All three employees deny these conversations occurred.

Plaintiff has made continuous requests for his music. In September 1996, he first requested his DATs be returned so he could use them in class as credit towards his Masters degree.[1] He did not receive the originals but was sent compact disc (CD) copies which he returned to Defendant the next day (Stainbrook Dep. 187-88, 216). He continued to request his DATs in 1998, 1999, and 2000 but was unsuccessful until April 2003 when two DATs containing "In the Zone" songs, not his musical catalog, were returned (Stainbrook 283-84, 256, Ex. Y-AA). At this time, Defendant informed Plaintiff that these DATs were the only ones in its possession (Amended Compl. ¶10). Except for the two "In the Zone" DATs, Defendant never returned DATs to Plaintiff. However, Defendant did send two DATs containing Plaintiff's musical catalog to Meloccaro, a former FOX employee with whom Plaintiff had an independent business relationship (Stainbrook 237-38). A note from Defendant

---

[1] Whether he made requests at this time for DATs, CD copies or both is unclear. In Plaintiff's original Complaint, he claims he requested the return of "his 3 DATs" (Compl. ¶9). In his subsequent deposition, Plaintiff contradicted himself by stating he told Defendant he needed DATs returned and then stated he only requested CD copies (Stainbrook Dep. 210-11, 214-15). Defendant filed a Motion for Summary Judgment claiming Plaintiff's conversion claim for the DATs was barred by the statute of limitations (Def.'s Mot. Summ. J. 10). In response, Plaintiff filed an Amended Complaint claiming he requested "his 3 DATs (on CD format)" (Amended Compl. ¶10). As explained below, regardless of the characterization by Plaintiff, his claim for conversion is barred by the statute of limitations.

indicated these were sent to Meloccaro "Per . . . confirmation from Jon Stainbrook" (Def.'s Mot. Summ. J., App. 0085). Plaintiff, however, denies giving confirmation or knowing about the release of the DATs to Meloccaro (Stainbrook Dep. 236). While Plaintiff now has these DATs in his possession, Plaintiff indicates some songs are missing, the songs are in a different order, and the quality is inferior to his originals (Second Amended Complaint ¶12).

Separately, according to Plaintiff, he orally contracted with Mickelson to provide two songs to Defendant, "Mantra" and "Goal," for which he would be paid a lump sum of $3,000 per song (Stainbrook 164, 284). Plaintiff delivered these songs but was never paid.

Plaintiff filed this action in September 2005 and filed an Amended Complaint in October 2006. The Amended Complaint added claims for trespass to chattels (Count Two) and copyright infringement (Count Five) as well as modified dates and facts of the original Complaint. To support his claim for copyright infringement, Plaintiff asserts he applied for copyright registration in November 2006 (Pl.'s Resp. to Def.'s Mot. Dismiss 3). Based upon the original Complaint, Defendant moved for summary judgment and subsequently moved for dismissal of the new counts in the Amended Complaint.

## SUMMARY JUDGMENT STANDARD

Pursuant to FED. R. CIV. P. 56(c), summary judgment is appropriate where there is "no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." *Id*. When considering a motion for summary judgment, the Court must draw all inferences from the record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court is not permitted to weigh the evidence or determine the truth of any matter in dispute; rather, the Court determines only whether the case

contains sufficient evidence from which a jury could reasonably find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

## CONVERSION

Plaintiff claims Defendant "wrongly exerted dominion over Plaintiff's personal property [the three DATs containing the musical catalog] and has thus committed an act that constitutes conversion" (Amended Compl. ¶18). Defendant asserts Plaintiff's conversion claim is barred by the statute of limitations for conversion.

The statute of limitations for conversion is four years under OHIO REV. CODE § 2305.09(B). The statute begins to run when Plaintiff "discovered, or should have discovered, the claimed matters." *Koe-Krompecher v. City of Columbus*, 2005-Ohio-6504, at ¶21 (Ohio Ct. App.) (citing *Investors REIT One v. Jacobs*, 46 Ohio St. 3d 176, syllabus ¶2b (1989). Generally, when Defendant rightfully obtains the property, but subsequently converts it wrongfully, discovery occurs when Plaintiff demands the return of his property, or Defendant denies Plaintiff's title to the property. *Houser v. Ohio Historical Soc.*, 62 Ohio St. 2d 77, 80 (1980); *Gehres v. Ater*, 148 Ohio St. 89, 96 (1947). However, the statute of limitations may run sooner than the demand or refusal date if the Court determines Plaintiff discovered or should have discovered the alleged conversion at a different date. *See Firsdon v. Mid-American National Bank & TrustCo.*, No. 90WD083, 1991 WL 254218, at *4 (Ohio Ct. App. Oct. 11, 1991).

Plaintiff contends he did not demand the return of the DATs until sometime in 2002 and did not get a refusal until 2003 (Pl.'s Resp. 11). Defendant counters that Plaintiff demanded the return of his DATs in 1996 and, therefore, his September 2005 lawsuit violates the four-year statute of limitations.

4

In 1996, Plaintiff requested Defendant return the DAT copies or the original DATs containing his musical catalog (Stainbrook Dep. 188-90, 207, 210-11). Plaintiff was sent a copy on CDs, not on DATs, and was instructed to return the CDs to Defendant. Plaintiff thought this was "ludicrous" and wanted his original DATs returned to him (Stainbrook Dep. 188). At this time, Defendant promised to get the DATs back to him as well as new CD copies if he returned the CD copies in his possession. Even though Plaintiff sent the CDs back he never received the original DATs or CD copies (Stainbrook Dep. 190).

Plaintiff's sworn testimony makes it clear that after receiving the CDs, Defendant knew he wanted the original DATs back and promised to return them. It is then at this moment that Plaintiff made his demand and the statute of limitations began to run.

Even if this could not be construed as a demand, shortly after this time Plaintiff should have discovered that Defendant was not returning his original DATs. At the very least, a year later in 1997, Plaintiff knew or should have known his original DATs were not being returned. Indeed, Plaintiff made repeated attempts, unsuccessfully, in 1998, 1999 and 2000 to have his DATs returned. He was told his music might be used for other projects, the DATs couldn't be found or were in use, or his calls would not be returned (Stainbrook Dep. 283-84). Plaintiff asserts he did not further pursue return of the DATs because of the possibility of future projects, which was the reason he initially sent Defendant the DATs (Pl.'s Resp. 11).

However, Plaintiff knew Defendant had copying capabilities and could easily make copies, and return the originals. If Defendant made copies, pursuing the original DATs would not have impaired Plaintiff's current or future business opportunities. Additionally, the fact that Defendant told him the DATs could not be found and refused to return his phone calls should have put him on notice

5

that Defendant would not return the original DATs. Therefore, even if the circumstances of 1996 are somehow not enough to constitute a demand or to put Plaintiff on notice that there was a conversion, the demands made in 1998, 1999 and 2000 are sufficient, individually and collectively, to constitute demands for the return of his DATs. Certainly by 2000, when he was denied his DATs again, four years after making his initial attempts, Plaintiff should have known the DATs would not be returned. Under any one of these scenarios, Plaintiff's conversion claim fails

### TRESPASS TO CHATTELS

"While authority under Ohio law respecting an action for trespass to chattels is extremely meager, it appears to be an actionable tort" and in recognition of the lack of relevant case law, courts applying Ohio law have turned to the Restatement (Second) of Torts. *CompuServe, Inc. v. Cyber Promotions*, 962 F. Supp. 1015, 1021 (S.D. Ohio 1997); *Dryden v. Cincinnati Bell Tel. Co.*, 135 Ohio App. 3d 394, 404 (1999). Plaintiff brings a claim for trespass to chattels based upon the same facts as his conversion claim. Defendant similarly asserts the claim is barred by the statute of limitations.

The Court need not reach the issue of statute of limitations because Plaintiff's Amended Complaint fails to set forth the elements of a trespass to chattels claim. Trespass to chattels occurs when one intentionally dispossesses another of chattel. Restatement (Second) of Torts, § 217(a); *Conley*, 2003-Ohio-2854, at ¶7. According to Restatement (Second) of Torts, § 221:

> A dispossession may be committed by intentionally
>
> (a) taking a chattel from the possession of another without the other's consent, or
> (b) obtaining possession of a chattel from another by fraud or duress, or
> (c) barring the possessor's access to a chattel, or
> (d) destroying a chattel while it is in another's possession, or
> (e) taking the chattel into the custody of the law.

6

Plaintiff fails to show he has been dispossessed under any of the subsections cited above. Because Plaintiff was no longer in possession, consented to Defendant's possession of the DATs without any allegation of fraud or duress, and Defendant remained in possession up until any destruction, the circumstances of this case do not raise a trespass to chattels claim.

Therefore, based upon the language of the Restatement (Second) of Torts, Plaintiff's claim for trespass to chattels fails as well.

### **ACCOUNTING FOR ROYALTIES AND FEES**

Plaintiff requests an accounting of "all recordings used and/or purchased" by Defendant pursuant to purported oral or written agreements. In essence, Plaintiff seeks an equitable determination by this Court of what he is due as a result of his relationship with Defendant. *See Moore v. Sweda*, 27 Ohio App. 3d 38, 39 (1985). In order to make this determination, "[a] claim for an accounting must set forth operative facts which, when construed in the plaintiff's favor, establish a right to the requested relief." *Davis v. DCB Financial Corp.*, 259 F. Supp. 2d 664, 674 (S.D. Ohio 2003) (citing *Fontbank, Inc. v. CompuServe, Inc.*, 138 Ohio App. 3d 801, 814 (2000)). However, Ohio courts have held that when an adequate action is afforded at law, Plaintiff cannot resort to equity. *Complete Building Show Co. v. Albertson*, 99 Ohio St. 11, 16 (1918). In *Complete Building Show Co.*, 99 Ohio St. at 16, the Ohio Supreme Court discussed the equitable remedy of accounting and found:

> The plaintiff has not proceeded upon the theory that the arrangement between it and the defendant constituted a trust, and does not seek to have any trust performed or executed; nor is this a case in which judgment for money can only follow as a result of a previous award of equitable relief. The relief which plaintiff does seek is reimbursement, and it asks that the amount found due be entered as a judgment. True, plaintiff avers that it does not know the extent of the claims which defendant has failed to pay, and therefore cannot state in its pleading the amount of its damage; but now that adequate means of obtaining discovery from parties to actions at law are afforded by our statute, suits for discovery, as previously prosecuted in equity, are no longer necessary, and it is

7

> elementary that, where an adequate remedy is afforded at law, equity may not be resorted to.

Plaintiff has not alleged the existence of a trust, nor is an accounting necessary to recover damages. Plaintiff alleges Defendant used a number of recordings for which he has not been paid under written or oral agreements, seeks a list of all of his songs used by Defendant and asks for reimbursement. This is, in essence, a damage claim for breach of contract. Plaintiff may not know the extent of Defendant's use of his songs, but this is easily learned through discovery. Since the relief prayed for by Plaintiff is adequately covered by his breach of contract claim and the information he seeks, if it exists at all, can be found through normal discovery, the equitable remedy of an accounting is not appropriate.

### **BREACH OF CONTRACT**

Plaintiff claims Defendant breached an oral agreement under which Plaintiff would provide original pieces of music and Defendant would pay royalties and fees as well as provide Plaintiff with copies of the programs in which his music was used.

The elements of a breach of contract claim are: (1) the existence of a valid contract; (2) performance by Plaintiff; (3) breach by Defendant; and (4) damage to Plaintiff. *Doner v. Snapp*, 98 Ohio App. 3d 597, 601 (1994). To establish the existence of a valid contract, Plaintiff must show "an offer, acceptance, contractual capacity, consideration (the bargained for legal benefit and/or detriment), a manifestation of mutual assent and legality of object and of consideration." *Kostelnik v. Helper*, 96 Ohio St. 3d 1, 3 (2002) (citing *Perlmuter Printing Co. v. Strome, Inc.*, 436 F. Supp. 409, 414 (N.D. Ohio 1976)). In order for the contract to be binding, Plaintiff must also show the parties' consent to the terms, a meeting of the minds, and certainty as to essential terms. *Zelina v. Hillyer*, 165 Ohio App. 3d 255, 258-59 (2005). Valid contracts may be either written or oral. *Kostelnik*, 96 Ohio

St. 3d at 3. "[A]n oral settlement agreement may be enforceable if there is sufficient particularity to form a binding contract" and its terms "may be determined from 'words, deeds, acts, and silence of the parties.'" *Id.* (citing *Rutledge v. Hoffman*, 81 Ohio App. 85, syllabus ¶ 1 (1947)).

Plaintiff asserts he has met all of the elements. He claims Mickelson made an oral offer to pay him $3,000 a song and specifically requested two songs. Plaintiff accepted and delivered the original songs "Mantra" and "Goal" to Defendant, but was never paid for these songs. Defendant raises two defenses against this claim. First, Plaintiff fails to prove the existence of an oral agreement, specifically due to the lack of a valid offer, meeting of the minds, or certainty of price. Second, the Statute of Frauds bars this claim.

Defendant's first argument is without merit. Plaintiff claims he had a conversation with Mickelson about selling Defendant two songs, while Mickelson denies entering into any oral agreement with Plaintiff.[2] Plaintiff's sworn testimony about their conversation is sufficient to raise an issue of material fact whether there was a contract and a breach by Defendant.

**Statute of Frauds**

Even though material facts exist, Defendant would be entitled to summary judgment if the Statute of Frauds barred the contract claim. The first question this Court must answer is whether the alleged oral agreement was for a personal service or for an intangible good because different statutes of frauds apply to each.

---

[2] Plaintiff submits tapes of unauthenticated voicemail messages between himself and Mickelson in support of his argument. Because the tapes are unauthenticated, Defendant believes they are not properly before this Court. Irregardless of the admissibility of the messages, Plaintiff provides sufficient evidence in his sworn deposition to create an issue of material fact regarding the existence of an oral agreement.

If the agreement is for personal service, the Statute of Frauds found in OHIO REV. CODE §1335.05 governs. It applies to "agreements which, by their terms, cannot be fully performed within a year, and not to agreements which may possibly be performed within a year, thus, where the time for performance under an agreement is indefinite, or is dependent upon a contingency which may or may not happen within a year, the agreement does not fall within the Statute of Frauds." *Sherman v. Haines*, 73 Ohio St. 3d 125, 127 (1995)

If the oral agreement is for an intangible good, the Statute of Frauds under OHIO REV. CODE §1301.12 applies. This section provides:

> (A) Except in the cases described in division (B) of this section a contract for the sale of personal property is not enforceable by way of action or defense beyond five thousand dollars in amount or value of remedy unless there is some writing which indicates that a contract for sale has been made between the parties at a defined or stated price, reasonably identifies the subject matter, and is signed by the party against whom enforcement is sought or by that party's authorized agent.
>
> (B) Division (A) of this section does not apply to contracts for the sale of goods, section 1302.04 of the Revised Code, nor of securities, section 1308.07 of the Revised Code, nor to security agreements, sections 1309.201 and 1309.203 of the Revised Code.

The alleged oral agreement constitutes a "close call" between goods and services. When Plaintiff provided Defendant with the songs, he was providing personal property -- a good. When Plaintiff wrote the song at Defendant's request, he was performing a service. This creates a mixed contract. "Ohio courts apply the predominant purpose test to mixed contracts to determine whether the predominant purpose of the contract is for the sale of goods." *Ankle & Foot Care Centers v. InfoCure Systems, Inc.*, 164 F. Supp. 2d 953, 959 (N.D. Ohio 2001). Whether the predominant purpose is for goods or services is a factual question, and when there are no disputed facts regarding the predominant purpose of the agreement, the trial judge may make the determination. *Valleaire Golf Club, Inc. v. Conrad*, 2003-Ohio-6575, at ¶7 (Ohio Ct. App.).

The test is "whether the predominant factor and purpose of the contract is the rendition of service, with goods incidentally involved, or whether the contract is for the sale of goods with labor incidentally involved." *Delorise Brown, M.D., Inc. v. Allio*, 86 Ohio App. 3d 359, 362 (1993); *Compare Valleaire Golf Club, Inc. v. Conrad*, 2003-Ohio-6575, at ¶5 (contract for installation of an irrigation system at a golf course was primarily a services contract because even though the pipes were essential, the owner wanted the pipes installed correctly); *and Renaissance Technologies Inc., v. Speaker Components, Inc.*, 2003-Ohio-98, at ¶7 (Ohio Ct. App.) (predominant purpose was for services where amount paid for engineering services greatly exceeded amount paid for electronic components, microprocessor testers plaintiff sought to acquire were novel and tailored to plaintiff's products, testers did not previously exist in market, defendant was compensated at an hourly rate, plaintiff was unable to guarantee that testers would work due to their novel nature, and defendant was to maintain and continually develop testers); *with Athens Bone & Joint Surgery, Inc. v. Management Consulting Group, Inc.*, 2003-Ohio-2599, at ¶23 (Ohio Ct. App) (contract for acquiring an X-ray machine as well as its installation and refurbishment is a contract for a good).

Under this test, the purported agreement here is one for goods. Defendant wanted the songs, and the labor on Plaintiff's part is merely incidental. This is evidenced by the fact that Defendant was to pay Plaintiff on the delivery of the song, not based on his labor. *Mecanique C.N.C., Inc. v. Durr Environmental, Inc*., 304 F. Supp. 2d 971, 977 (S.D. Ohio 2004) (payment tied to the good is an indicator that the contract is for an "operating good"). Plaintiff's devotion of significant time or effort to the song is insufficient to establish that Defendant is purchasing the services rather than the goods. *Mecanique C.N.C., Inc.*, 304 F. Supp. 2d at 977 (extensive installation service was merely incidental to the procurement of ductwork)*; cf. Elbe v. Adkins*, 812 F. Supp. 107, 111 (S.D. Ohio 1991) (holding

11

that the predominant purpose of hiring a wedding photographer is the service of photographing the wedding rather than the pictures themselves).

Here, the value of the songs to Defendant was based solely upon Defendant's possession of the DATs and its ability to use the songs in its shows. Plaintiff's services are worthless to Defendant if the songs were not recorded. Defendant provided Plaintiff with certain criteria for the songs but was not particularly interested in Plaintiff's labors to create the song. *See Heidtman Steel Products, Inc. v. Compuware Corp.*, No. 3:97CV7389, 2000 WL 621144, at *9 (N.D. Ohio 2000) (noting as significant to its determination of a service as the predominant purpose that "the agreement between plaintiff and defendant was not for a completed, ready-to-go software package"). Therefore, the agreement is for the sale of the song, a good, with Plaintiff's services being incidental.

Because the predominant purpose of the agreement was to create a song, it is an intangible good under OHIO REV. CODE § 1301.12. With no evidence of a written agreement, OHIO REV. CODE § 1301.12 limits Plaintiff's potential recovery to $5,000. *Carcorp, Inc. v. Chesrown Oldsmobile-GMC Truck, Inc.*, 159 Ohio App. 3d 87, 96 (2004). Therefore, material facts remain in dispute as to Plaintiff's breach of contract claim and any potential recovery is limited to $5,000.

## COPYRIGHT INFRINGEMENT

Plaintiff asserts copyright infringement of sixteen of his songs. As a prerequisite to filing a copyright infringement claim under 17 U.S.C. § 411(a), the copyright must be registered with the U.S. Copyright Office. *Murray Hill Publications, Inc. v. ABC Communications, Inc.*, 264 F.3d 622, 630 (6th Cir. 2001); 17 U.S.C. § 411(a) ("[N]o action for infringement of the copyright in any United States work shall be instituted until registration of the copyright claim has been made in accordance with this title").

This jurisdictional requirement has been subject to two different interpretations. Federal case law is conflicting as to whether "registration" is made when the application for registration is filed or when the plaintiff received the registration certificate from the Copyright Office. *See Ripple Junction Design Co. v. Olaes Enterprises, Inc.*, No. 01:05-CV-43, 2005 WL 2206220, at *3 (S.D. Ohio 2005) (unreported).

Regardless of the interpretation used, this Court lacks jurisdiction over Plaintiff's copyright claim. Under either interpretation, for this Court to have jurisdiction over the claim, Plaintiff had to file an application or receive a registration certificate by October 2, 2006, the date of the Second Amended Complaint. Plaintiff has not provided a registration certificate for the copyrights at issue, nor has Plaintiff submitted admissible evidence that he filed an application with the Copyright Office prior to October 2. In fact, the documents submitted by Plaintiff indicate his application was filed on November 17, 2006 at the earliest.[3] For this reason, this Court does not have jurisdiction over Plaintiff's copyright infringement claim under 17 U.S.C. § 411(a).

## CONCLUSION

For the reasons stated above, Defendant's Motions to Dismiss and for Summary Judgment are granted in part and denied in part. Defendant's Motions as to conversion (Count One), trespass to chattels (Count Two), accounting for royalties and fees (Count Three) and copyright infringement (Count Five) are GRANTED. Counts One, Two, and Three are dismissed with prejudice. Count Five

---

[3] Plaintiff attached unauthenticated copies of an application, U.S. Postal Service envelope, and IOLTA account check. Each document is dated November 17, 2006. However, there is no accompanying affidavit in the Record, nor any indication that the application was actually mailed on that date or specifically what was included in the envelope. These documents are insufficient to establish filing of the application prior to the filing of his Second Amended Complaint.

is dismissed without prejudice. Defendant's Motion for Summary Judgment on breach of contract (Count Four) is DENIED.

IT IS SO ORDERED.

                                            s/ *Jack Zouhary*
                                     JACK ZOUHARY
                                     U. S. DISTRICT JUDGE

                                     December 19, 2006